# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR05-3003-MWB |
| vs. | **REPORT AND RECOMMENDATION** |
| ROY J. KEOUGH, | |
| Defendant. | |

This matter is before the court on motion (Doc. No. 17) of the defendant Roy J. Keogh to suppress evidence obtained during the warrantless search of Keough's home on November 12, 2004, and all evidence flowing therefrom, including Keough's statements to law enforcement personnel "at or near" the time of the search. Keough is charged in a two-count indictment alleging he manufactured, and possessed with intent to distribute, methamphetamine. (*See* Doc. No. 1)

The plaintiff (the "Government") resists Keough's motion. (Doc. No. 19) Pursuant to the trial management order in this case (Doc. No. 6), motions to suppress were assigned to the undersigned United States Magistrate Judge for review, any necessary hearings, and the filing of a report and recommended disposition of the motion. Accordingly, the court held an evidentiary hearing on July 15, 2005. Assistant U.S. Attorney Forde Fairchild appeared on behalf of the Government. Keough appeared in person with his attorney, Assistant Federal Defender Robert A. Wichser.

At the hearing, the Government offered the testimony of Mason City Police officers Robert Greer and Frank Stearns. Keough testified on his own behalf. One

exhibit was admitted into evidence: **Gov't Ex. 1** -Mason City Police Department Permission to Search form dated 11/12/04.

The court has reviewed the parties' briefs and considered the evidence, and finds the motion is fully submitted and ready for decision.

## *BACKGROUND FACTS*

Keough's motion rises and falls on the credibility of the witnesses. The court must decide which of the parties' two widely divergent versions of the facts is credible.

On November 12, 2004, Officer Greer received an anonymous call about an ether odor at a trailer park in Mason City, Iowa. The caller stated the odor seemed to be emanating from a particular trailer, and noted all the windows were open in the trailer. Officer Greer has experience investigating methamphetamine labs, and he knew that ether often is used in the methamphetamine manufacturing process. He also knew ether is a volatile, hazardous substance. He contacted his supervisor, Officer Stearns, and stated he was going to the trailer park to investigate the odor.

Officer Greer went to the trailer park immediately. He was wearing plain clothes and was driving an unmarked vehicle. The officers decided Officer Greer would walk around the trailer in question and see if he could detect the odor, while Officer Stearns, who was in uniform and driving a marked police vehicle, would wait until he heard from Officer Greer before taking further action. Officer Greer walked past the trailer and then back again. It was a windy day, and on his first pass by the trailer, he did not detect an odor, but when he walked back by the trailer again, he detected a brief ether odor.

Officer Greer notified Officer Stearns of his findings, and he asked Officer Stearns to come to the location and see if he could smell the odor. While Officer Greer was waiting for Officer Stearns to arrive, he saw a blue vehicle being driven by a male, later

2

identified as Keough, arrive and pull into the driveway in front of the trailer in question. When Officer Stearns arrived, both of the officers got out of their vehicles and approached Keough, who had just gotten out of the blue car. The officers identified themselves as police officers, and told Keough they were investigating a complaint of an ether odor. They asked Keough if he had anything in his trailer that could be producing a chemical odor. While they were talking with Keough, Officer Greer noticed Keough had several scabs or cuts on the backs of his hands. This raised Officer Greer's suspicion because he knew cuts and sores can be related both to methamphetamine use and to the manufacturing process.

Keough told the officers he had used a chemical cleaner in the process of refinishing a floor just inside his trailer. Officer Greer asked if the officers could see the area, and Keough agreed they could. He led the officers to the front door of his trailer, and used his key to open the front door.

The above facts basically are undisputed. The court will now set forth the disputed facts, beginning with the officers' version of events, and then setting forth Keough's version.

The Officers' Version of Events

The officers asked Keough if he knew anything about an ether odor that could be coming from his trailer. According to both of the officers, Keough said he knew nothing about an ether odor, he was not involved in any type of drug activity, he was just a hard-working guy, and the officers could search him, his car, and his house because he had nothing to hide. The officers asked if they could see the area where Keough had been stripping his floor, and Keough led them up the deck stairs to the door. He opened the

trailer and led them inside. Keough walked in the door first, and they walked in right after him.

As soon as they stepped inside, Keough said he had been refinishing the floor just inside the door. He lifted up the carpet and showed them. Officer Greer detected a chemical odor at that point, but it was different from the odor he had smelled outside and it was not an ether smell. He did not detect an ether odor inside the trailer. Officer Stearns continued talking with Keough while Officer Greer looked around the entryway area. Eventually, Officer Stearns asked if the officers could look around the inside of the trailer. Keough agreed, and he walked the officers down the hall to a back bedroom that was locked with a large padlock. On the way to the back bedroom, Keough and the officers walked through the living room, past one bedroom, and past the bathroom, to the end of the hallway. Keough used a key to unlock the padlock on the door of the back bedroom and led the officers into the bedroom.

Keough entered the bedroom first, followed by Officer Stearns and then Officer Greer. When Keough first entered the bedroom, Officer Stearns saw him make a quick movement, like he was trying to put something in a dresser drawer. He asked Keough what he was doing, and the officer then saw a metal tray containing a couple of glass pipes, which Keough stated were "crank pipes." Officer Greer did not see the pipes or the tray because the bedroom was quite small, and he could not see around Keough and Officer Stearns. However, he did see a chair sitting by the door, and he noticed the chair was empty.

Officer Stearns asked Keough if he had any controlled substances on him. Keough said he did not, and he thrust his hands into his pockets and pulled out a small knife, which he threw on the bed. Officer Stearns then searched Keough. While this was taking place, Officer Greer noticed there was a black pouch on the chair by the bedroom door.

4

He told Officer Stearns about the pouch, stating nothing had been on the chair just a couple of minutes before. Officer Greer opened the pouch and looked inside. He saw several small baggies containing white powder. When the officers asked Keough whose fingerprints they would find on the baggies, Keough replied, "Roy James Keough."

The officers placed handcuffs on Keough, and took him out to the living room, where they sat him on a sofa. They had another officer bring a Permission to Search form to the trailer. They explained the form to Keough, uncuffed him, and he signed the form. Both officers stated Keough had told them several times that they could search all they wanted because he had nothing to hide and they would not find anything illegal. Officers continued their search of Keough's trailer and an outbuilding, and they located numerous items of contraband.

Keough's Version of Events

Keough tells a different story. When he arrived at his trailer on the afternoon in question, he was returning from work where he performed maintenance at a hotel. The scratches on his hands were from his job.

Keough pulled up to the trailer in his car and two men walked up to him. He got out of his vehicle and asked if he could help them. They identified themselves as police officers, and Officer Greer stated they were investigating a phoned-in complaint of a strong chemical odor in the area. The officer addressed Keough as "Roy," although Keough did not recall ever meeting the officer before that day, and he asked Keough if he had anything in his house that would cause an odor. Keough responded that he had

5

used a chemical solvent to strip his floor.  Officer Greer asked if they could "see it[1]" and Keough agreed.

Keough and the officers walked up to the trailer.  Keough took a key off of his belt loop, unlocked the front door, and replaced the key on his belt loop.  He opened the door and stepped inside his entryway, where he pulled up a small rug that was covering the area of the floor he had been stripping.  Keough said, "This stinks," referring to the small rug, and he threw the rug outside between the two officers.  Keough had just barely stepped inside the trailer at this point, and "instantly" after he threw the rug outside, both officers walked in around him, into the entryway.  Keough never invited the officers into his home, and as soon as they came in, Keough said, "Hey!"

Officer Stearns asked, "Roy, would you consent to us searching the house?" and Keough said, "No."  Then Officer Greer said, "Roy, could you show me the chemical solvent you used on the floor?"  Keough said, "Yes, it's right here in the cabinet."  He turned around to get the solvent, and when he turned back around, the officers were in his living room.  Keough said to Officer Greer, "Excuse me, sir, do you have a search warrant?" and the officer responded, "Roy, we don't need a search warrant.  We have probable cause."

Officer Stearns then said, "Roy, that door back there is locked.  Why is that door locked?" (referring to the back bedroom door).  Officer Stearns pointed at the keys on Keough's belt buckle and said, "Roy, are those the keys?"  Keough replied, "Yes, sir," and Officer Stearns started walking toward him, saying in a loud, forceful voice, "Unlock that door.  Unlock that door now."  Because Officer Greer had stated the officers did not need a warrant to search Keough's home, Keough obeyed Officer Stearns's order and went

---

[1] Keough's testimony is not clear as to whether the "it" they asked to see was the floor or the chemical solvent.

back to unlock the bedroom door. Keough did not feel free to leave at that point, and felt he had to comply with the officers' demands.

After Keough was handcuffed and Officer Stearns was walking him back to the living room, Officer Stearns got on his radio, called another officer, and asked him to bring in a consent to search form. Keough said, "I thought you didn't need consent to search because you had probable cause." Keough signed the consent to search form, but stated he did so "with a signature that you would not be able to read because I did not want to sign it at the time and I felt threatened."[2]

According to Keough, the officers "made up" their testimony about him consenting to a search of his home. He stated he "never once" gave them consent to search his person, his car, or his trailer. He testified, "Every time I was asked . . . if I would give them consent to search, I stated, 'No.'"

Keough has been convicted of three prior felony drug offenses, and he has numerous other convictions in his criminal history. He stated, "I know when I'm free to leave and when I'm not," but stated he can be intimidated by police. He did not feel free to leave on the date in question and he felt intimated by Officers Greer and Stearns.

## *DISCUSSION*

This case involves a warrantless search of a residence. The Eighth Circuit has noted:

> As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v.*

---

[2]The court has compared Keough's signature on the consent to search form with his signature on the financial affidavit offered in support of his request for court-appointed counsel, and his signature on the detainer, both located in the Clerk's file. All three of the signatures are very similar and none of them is legible.

> *Phillips*, 540 F.2d 319 (8th Cir. 1976), *cert. denied*, 429 U.S. 1000, 97 S. Ct. 530, 50 L. Ed. 2d 611 (1976), but on the government to justify a warrantless search. *United States v. Bruton*, 647 F.2d 818 (8th Cir. 1981)[,] *cert. denied*, 454 U.S. 868, 102 S. Ct. 333, 70 L. Ed. 2d 170 (1981).

*Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

The United States Supreme Court has held that consent obviates the need for a warrant or probable cause:

> It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 [(1967)]; *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S. Ct. 2022, 2031-2032, 29 L. Ed. 2d 564 [(1971)]; *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S. Ct. 1975, 1981, 26 L. Ed. 2d 419 [(1970)]. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Davis v. United States*, 328 U.S. 585, 593-594, 66, S Ct. 1256, 1261-1262, 90 L. Ed. 1453 [(1946)]; *Zap v. United States*, 328 U.S. 624, 630, 66 S. Ct. 1277, 1280, 90 L. Ed. 1477 [(1946)].

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973).

The Eighth Circuit Court of Appeals has provided courts with ample guidance in determining whether a consent to search was voluntary. *See, e.g.*, *United States v. Hathcock*, 103 F.3d 715, 719-20 (8th Cir. 1997) (listing factors to consider in determining whether consent was voluntary); *United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997) (noting Government has the burden of demonstrating voluntariness

by a preponderance of the evidence). These cases, however, proceed on the assumption that consent was, in fact, given, and then attempt to determine whether the consent was made voluntarily. In the present case, Keough denies he consented to a search of his home up to the point where he signed the consent to search form, and he claims he signed the form under duress. In a nutshell, the court is faced here with an old-fashioned swearing match, and must decide whose testimony is credible. "'It is for [the fact-finder] to assess the credibility of witnesses and resolve conflicting testimony.'" *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997) (quoting *United States v. Cunningham*, 83 F.3d 218, 222 (8th Cir. 1996)). *See also United States v. Hurse*, 477 F.2d 31, 33 (1973) ("[I]ssues of credibility must be resolved by triers of fact and not by this court.") The court's factual findings will be reviewed only for clear error. *United States v. Hernandez*, 281 F.3d 746, 748 (8th Cir. 2002).

In assessing the credibility of the witnesses, the court finds some guidance in the Eighth Circuit pattern jury instruction on witness credibility. Jurors are directed as follows:

> In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, and motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether the witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence you believe.

Eighth Circuit Pattern Jury Instructions, Preliminary Instructions Before Opening Statements, No. 1.05.

Both the officers and Keough provided testimony that was believable in parts and implausible in parts, making the credibility determination a difficult one in this case.

9

The court, therefore, will apply each of the factors contained in the pattern instruction to determine which way the scales tip.

All three of the witnesses were articulate and testified clearly. They all appeared to be of average or above-average intelligence (if one ignores the less-than-intelligent choices Keough has made during his lifetime). The court finds this factor does not weigh in favor of either side.

All three witnesses had an equal opportunity to see and hear the things about which they testified, and all three appeared to have comparable memories of the events. These factors also do not weigh in favor of either side. Each of the witnesses spoke clearly in response to questions and displayed an appropriate manner. There is no evidence any of the witnesses said something different at an earlier time. In addition, the court has no other evidence to consider beyond the witnesses' testimony. Neither side offered any documentary exhibits or other forms of evidence at the hearing. None of these factors weighs in favor of either side.

On the issue of motive, the possible motive for Keough to testify falsely is obvious. He has three prior felony drug convictions, and if convicted on the present charges, he could spend the rest of his life in prison. Possible motives for the officers to testify falsely are much more speculative. These could include a desire not to be reprimanded for conducting an illegal search, a desire to protect the validity of the evidence seized during the search, some personal animosity toward the defendant, or a number of other motives known only to the officers. The point is the officers' motives to testify falsely are much less compelling than Keough's. The court finds this factor weighs in the Government's favor.

The most difficult factor to weigh in this matter is the reasonableness of the witnesses' testimony. As it turns out, this is the most important, and controlling, factor.

All three of the witnesses gave a reasonable overall description of the events, but each of them also testified to certain facts that seem inherently unreasonable.

The portions of the officers' testimony the court finds implausible are that Keough, knowing he had contraband in his trailer, would blithely consent to a warrantless search, and then, instead of standing back and letting the search take place, would, with no prompting, lead the officers directly down the hall, past another bedroom with a closed door, to a bedroom that was padlocked shut and contained contraband. The court is aware, from experience, that defendants often give consent to searches that lead to the discovery of incriminating evidence. Here, however, the officers testified Keough, without prompting, led them directly to a locked room containing incriminating evidence, unlocked the room, and led them inside. This scenario is hard to accept as true.

According to Keough, the officers told him they did not need a warrant because they had probable cause, and he believed them. They then ordered him to unlock the back bedroom. If this version of the events is true, then it is reasonable to believe Keough would have unlocked the back bedroom and allowed the officers to search his trailer. On the other hand, Keough has had numerous contacts with law enforcement over the years, and had enough awareness of his situation to ask the officers why, if they had the right to search his trailer without a warrant, they would need a "consent to search" form.[3] It seems unreasonable that Keough, under these circumstances, would have signed the consent to search form. Although Keough testified he "felt threatened," no evidence was offered that anyone threatened Keough if he did not sign the form. In evaluating Keough's version of the events of that day, the court also is troubled by the fact that Keough has three prior drug felony convictions. *See* Fed. R. Evid. 609(a)(1).

---

[3] Regrettably, no testimony was elicited by either party to the remainder of this conversation, if the conversation in fact occurred.

Considering the totality of the circumstances, the court finds Keough's signature on the consent form is controlling evidence that he consented to the search. However, the court has difficulty discounting Keough's testimony that he consented to the search based on the officers' representation that they did not need a warrant because they had probable cause. The Government denies the officers told Keough they did not need a warrant, but argues the officers did, in fact, have probable cause to search the trailer and exigent circumstances justified the warrantless search. (*See* Doc. No. 19-2 at 8-11) The Government argues probable cause existed on the basis of the ether odor in the area of Keough's trailer, and the fact that Keough had three prior felony drug convictions. (*See id.* at 9-10)

The court finds there was neither probable cause nor exigent circumstances before the officers entered the back bedroom of the trailer. The court recognizes that the Eighth Circuit Court of Appeals has held on several occasions that the odor of ether, which is known to be associated with methamphetamine production, supports a finding of probable cause. *See Kleinholz v. United States*, 339 F.3d 674, 677 (8th Cir. 2003) ("The smell of ether might alone support a finding of probable cause") (citing *United States v. Francis*, 327 F.3d 729, 736 (8th Cir. 2003); *United States v. Clayton*, 210 F.3d 841, 845 (8th Cir. 2000); *United States v. Ryan*, 293 F.3d 1069, 1062 (8th Cir. 2002) (noting ether odor coupled with defendant's history of drug convictions combined to create probable cause); *United States v. Caves*, 890 F.2d 87, 90-91 (8th Cir. 1989)). However, the officers testified they did not smell ether once they stepped inside Keough's trailer; Officer Greer had only smelled ether briefly when he was outside, in the area of the trailer. Had the officers smelled ether inside the trailer, that fact alone would have justified a warrantless search of the trailer, but the facts indicate otherwise. Furthermore, the court finds exigent circumstances were not present. Again, the court notes the

officers had not smelled ether inside Keough's trailer, and there was nothing in plain view to indicate he was involved in illegal activities. Keough had been cooperative with the officers from the onset of their encounter, and he had produced a reasonable explanation for a chemical odor, although not an ether odor, to be coming from his trailer. In addition, there is no evidence that either of the officers knew Keough had prior drug convictions.

In the absence of probable cause and exigent circumstances, the only evidence supporting the warrantless search is Keough's consent. Since the court has found that Keough gave his consent to the search of the trailer, the court must examine whether the consent was voluntary. "'The question of whether an expression of consent is voluntary or coerced is . . . a question of fact, subject to review for clear error.'" *United States v. Adams*, 346 F.3d 1165, 1171 (8th Cir. 2003) (quoting *United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals has held:

> The government has the burden of proving by a preponderance of the evidence that a subject's alleged consent to a search was legally sufficient to warrant admitting the fruits of the search into evidence. *See United States v. Matlock*, 415 U.S. 164, 177, 94 S. Ct. 988, 39 L. Ed. 2d, 242 (1974). This burden "'is not satisfied by showing a mere submission to a claim of lawful authority.'" *United States v. $404,905 in U.S. Currency*, 182 F.3d 643, 649 n.3 (8th Cir. 1999) (quoting *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (plurality opinion)). Rather, the government must show that a reasonable person would have believed, *see United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998), that the subject of a search gave consent that was "the product of an essentially free and unconstrained choice," *Schneckloth v. Bustamonte*, 412, U.S. 218, 225, 93

S. Ct. 2041, 36 L. Ed. 2d 854 (1973), and that the subject comprehended the choice that he or she was making.

*United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004).

All three witnesses testified Keough agreed to show the officers the area where he had been stripping the floor, and he did so. Keough also testified that when the officers intruded into his trailer and began to look around, he asked the officers if they needed a warrant, and he was told they did not need a warrant because they had probable cause. If Keough's testimony is true, then his consent to a search of his trailer, and his acquiescence in Officer Stearns's directive that he unlock the padlocked bedroom door, were done in "mere submission to a claim of lawful authority." *Id. See United States v. Vincent*, 925 F.2d 1458, 1991 WL 18545 (4th Cir.) (unpublished disposition) ("The defendant's consent . . . cannot be construed as an acquiescence to a claim of lawful authority, *see Bumper v. North Carolina*, 391 U.S. 543 (1968), because the officers did not claim to have a warrant or probable cause to conduct a search."). In that situation, the officers could not reasonably have believed that Keough's consent was voluntarily and freely given. *See id.* These are well-trained, experienced officers who would have known they lacked probable cause, given the lack of ether odor inside the trailer, and who misrepresented their authority to induce Keough to consent to the search. *See Ohio v. Robinette*, 519 U.S. 33, 117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996) ("Reasonableness . . . is measured in objective terms by examining the totality of the circumstances.")

The evidence here is close, and on the whole, not convincing on either side. However, weighing the totality of the evidence, and assigning the Government the burden of proof, as it must, the court finds Keough's motion to suppress should be granted.

## *CONCLUSION*

For the reasons discussed above, IT IS RESPECTFULLY RECOMMENDED, unless any party files objections to this Report and Recommendation as specified below, that Keough's motion to suppress be **granted**.

Any party who objects to this report and recommendation must serve and file specific, written objections **by no later than July 29, 2005**. Any response to the objections must be served and filed **by August 3, 2005**.

**Further, any party who files objections must contemporaneously order a transcript of the hearing or the court may deem the party's objections waived.**

**IT IS SO ORDERED.**

**DATED** this 15th day of July, 2005.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT